# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FIRST NATIONAL INSURANCE
COMPANY OF AMERICA,

      Plaintiff,

v.                                                                          No. CIV 19-0276 RB/LF

MARCELINO XAHUENTITLA, BEN'S
BIG BURGERS, LLC, and CHARLES
KNOBLAUCH, as Personal Representative
of the Estate of Robert Hohnke,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

First National Insurance Company of America (First National) filed a declaratory judgment action in this Court seeking a declaration on whether the Commercial General Liability Policy (CGL Policy) it issued to Ben's Big Burgers, LLC (Ben's) requires it to defend or indemnify Ben's and/or Mr. Marcelino Xahuentitla (collectively the "State Defendants") in an underlying state court wrongful death suit. First National believes that the CGL policy's "Auto Exclusion clause" clearly precludes coverage of the State Defendants. Mr. Charles Knoblauch, as Personal Representative of the Estate of Mr. Robert Hohnke, moves to dismiss the federal action and urges the Court to decline to exercise its jurisdiction because a determination of the coverage dispute will implicate numerous factual findings, policy determinations, and a novel question of state law. While First National is not a party in the state lawsuit and the coverage issue has not been raised in state court, the Court agrees that the exclusion question raises a novel issue, and the parties have offered no relevant state court guidance. Having considered the parties' arguments and the five *Mhoon*

factors, the Court finds that the motion to dismiss should be **GRANTED**.

## I.      Factual Background[1]

First National is a foreign corporation organized under the laws of New Hampshire with its principal place of business in Massachusetts. (Doc. 1 (Compl.) ¶ 1.) Mr. Xahuentitla is a resident of Colorado and owned Ben's, a restaurant and limited liability corporation incorporated under the laws of Colorado. (*Id.* ¶¶ 2–4.) Mr. Knoblauch is a resident of New Mexico. (*Id.* ¶ 5.)

First National issued a CGL Policy to Ben's for the period from April 8, 2011, through April 8, 2012. (*Id.* ¶ 11; *see also* Doc. 1-A.) First National acknowledges that both Ben's and Mr. Xahuentitla (who "was a member and/or manager of the limited liability company") qualified as insureds under the terms of the CGL Policy. (Compl. ¶¶ 12, 31.) The CGL Policy contains an Auto Exclusion clause, which excluded coverage for:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any . . . "auto" . . . owned or operated by . . . any insured. . . . This exclusion applie[d] even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any . . . "auto" . . . that is owned or operated by . . . any insured.

(Doc. 1-A at 9; *see also* Compl. ¶ 12.)

According to the Second Amended Complaint in the state lawsuit, Mr. Xahuentitla was driving his vehicle in San Juan County, New Mexico on December 4, 2011. (Doc. 1-B ¶¶ 3–4; *see also* Compl. ¶ 17.) Mr. Xahuentitla, on an errand that the parties agree fell within the scope of his employment with Ben's, "was driving . . . at a speed that was later deemed excessive for the icy conditions, when [he] lost control of his pickup truck and slid head-on into the path of Mr.

---

[1] The Court recites the facts relevant to this motion as they are derived from the Complaint (Doc. 1 (Compl.)) and the exhibits attached thereto.

Hohnke's vehicle, fatally injuring Mr. Hohnke." (Compl. ¶ 17 (citing Doc. 1-B ¶¶ 3–6).) Mr. Knoblauch filed suit against Mr. Xahuentitla in state court on January 31, 2013. *See Knoblauch v. Xahuentitla*, D-202-CV-201301284, Compl. (N.M. 2d Jud. Dist. Ct., Jan. 31, 2013). Mr. Knoblauch added Ben's as a defendant in 2015. (Compl. ¶ 14.) *See also Knoblauch*, D-202-CV-201301284, First Am. Compl. (N.M. 2d Jud. Dist. Ct., Sept. 9, 2015). Mr. Knoblauch brings claims for negligence and wrongful death against Mr. Xahuentitla. (Doc. 1-B ¶¶ 7–10.) He brings claims for negligent supervision, negligent retention, and negligence based upon respondeat superior against Ben's. (*Id.* ¶¶ 11 –28.)

First National commenced defense of Ben's in the state lawsuit under a reservation of rights. (Compl. ¶ 25.) Mr. Xahuentitla was being defended by his personal automobile insurance carrier, Farmers Insurance. (*Id.* ¶ 24.) "Upon a demand by First National, Farmers Insurance[] later accepted a tender for the defense of Ben's and hired defense counsel O'Brien & Padilla, who entered its appearance on August 20, 2018, and is currently defending Ben's in the underlying state court litigation." (*Id.* ¶ 26.) Mr. Knoblauch, however, contends that O'Brien & Padilla is only defending Ben's pursuant to the New Mexico's "Omnibus Clause."[2] (*See* Doc. 7 at 2.) Mr. Knoblauch asserts that Ben's "has been left undefended on the direct negligence counts against it since [First National] withdrew from the" state lawsuit. (*Id.*)

First National filed its federal declaratory judgment action on March 27, 2019. (Compl.) It seeks a declaration regarding whether it is obligated to defend or indemnify the State Defendants under the CGL Policy. (*Id.* ¶ 28.) It argues that coverage is explicitly precluded by the Auto

---

[2] "An 'omnibus clause' is a provision in an insurance policy that extends liability coverage to persons who use the named insured's vehicle with his or her permission." *Am. Auto. Ins. Co. v. First Mercury Ins. Co.*, No. 13cv439 MCA/LF, 2017 WL 3575882, at *10 (D.N.M. Mar. 31, 2017) (quoting 8 Steven Plitt, *et al.*, Couch on Ins. § 111:1 (3rd ed. updated 2016)).

Exclusion clause, which excludes coverage for bodily injury or property damage that arises from the use of an automobile, even if the claims allege negligence. (*Id.* ¶ 30 (citing Doc. 1-A at 9).) Mr. Knoblauch disagrees and argues that another provision of the CGL Policy—the "Separation of Insured clause"—may work to limit the exclusion provision. (Doc. 7 at 7–9.) He now moves to dismiss First National's declaratory judgment action on the basis that the Court lacks subject matter jurisdiction and alternatively asks the Court to abstain from exercising jurisdiction. (*See id.* at 1.)

## II. The Court has subject matter jurisdiction over this action, and First National has standing to bring the lawsuit.

For the Court to have subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1), there must be complete diversity among the parties, and "the matter in controversy [must] exceed[] the sum or value of $75,000, exclusive of interest and costs . . . ." 28 U.S.C. § 1332(a)(1). "Diversity jurisdiction requires complete diversity in that no plaintiff be the citizen of the same state as any defendant." *Dunn v. Nat'l Union Fire Ins. Co.*, No. CV 06-027 WJ/WPL, 2006 WL 8443321, at *2 (D.N.M. Nov. 9, 2006) (citing *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000)). "For diversity purposes, a corporation is 'deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" *Gadlin*, 222 F.3d at 799 (quoting 28 U.S.C. § 1332(c)(1)).

Here, First National asserts that it is a citizen of both New Hampshire and Massachusetts. (Compl. ¶ 1.) Mr. Knoblauch begins by stating that the Court must determine whether it "has the necessary diversity jurisdiction to proceed"; yet, he does not dispute First National's citizenship. (Doc. 7 at 3.) Rather, he asserts that the CGL Policy refers to "Colorado Casualty" as the insurer, and thus it is unclear "[t]hat First National issued the policy and is therefore the proper Plaintiff to

bring this action . . . ." (*Id.* (citing Doc. 1-A at 6).) In reality, Mr. Knoblauch challenges First National's standing to bring this action.

"As a general matter, a plaintiff must demonstrate standing to sue by establishing (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Phila. Indem. Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1335 (10th Cir. 2017) (internal quotation marks and quotation omitted). Mr. Knoblauch does not dispute that *some* insurance company has standing in this matter, only whether First National is that company. (*See* Doc. 7.) First National sufficiently addressed this issue. To begin, First National averred in its Complaint that it issued the CGL Policy to Ben's (Compl. ¶ 11), and it clarifies in its response brief that it underwrote the coverage. (Doc. 8 at 4.) Next, First National's name is present on the Declarations pages and the Policy Forms of the CGL Policy. (Doc. 1-A at 2–5.) Finally, First National submitted an affidavit from Mr. David Hager, an archivist with First National, who affirms that the CGL Policy and accompanying documentation are true copies of the originals. (*Id.* at 1.) Mr. Knoblauch fails to address either diversity jurisdiction or standing in his reply brief. (*See* Doc. 9.) The Court finds that First National has established that it has standing to bring this action and that there is complete diversity among the parties.

## III.    The Court will decline to exercise jurisdiction.

First National brought this lawsuit pursuant to the Declaratory Judgment Act, which provides that a court with jurisdiction "may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). District "courts are 'under no compulsion' to exercise jurisdiction under" the Declaratory Judgment Act. *Century Sur. Co. v. Roybal*, Civ. No. 11-1107 BB/ACT, 2012 WL 13005437, at *2 (D.N.M. Aug. 23, 2012) (quoting

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 492, 494 (1942); citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)). The *Brillhart* Court stated that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. "In such situations, interference with the state court litigation 'should be avoided.'" *Roybal*, 2012 WL 13005437, at *2 (quoting *Brillhart*, 316 U.S. at 495).

As district courts are not *required* to declare parties' rights, the Tenth Circuit has set forth several factors courts must consider "in deciding whether or not to exercise their statutory declaratory judgment authority."[3] *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982–83 (10th Cir. 1994)) (subsequent citations omitted). These "*Mhoon* factors" include:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* (quoting *Mhoon*, 31 F.3d at 983).

### A.    The first two *Mhoon* factors weigh slightly in favor of exercising jurisdiction.

"The first two *Mhoon* factors focus on the degree of identity between the parties and issues in the state and federal suits." *Roybal*, 2012 WL 13005437, at *2 (citing *United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002)). "[T]he likelihood a declaratory judgment will resolve the immediate dispute between the parties may tip the scales in favor of exercising

---

[3] Actions brought pursuant to the Declaratory Judgment Act must also present an "actual controversy," a requirement that is not at issue in this lawsuit. *See Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) (citations omitted).

jurisdiction[,] . . . [while] the existence of outstanding claims in a parallel state court action may counsel a different conclusion." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 982 n.3 (10th Cir. 2012).

First National contends that the circumstances here are similar to those in *West American Insurance Co. v. Atyani*, where the plaintiff insurance company (West) asked the Court to determine whether the insurance policies it had issued required it to defend and indemnify several of the defendants in an underlying state case. 338 F. Supp. 3d 1227, 1230 (D.N.M. 2018). West was not a party in the state action, and the scope and extent of the coverage had not been addressed or pleaded in the underlying case. *Id.* at 1232. Consequently, the Court found, "a second proceeding in either state or federal court would be necessary to determine liability coverage" after the necessary facts were decided. *Id.* at 1232–33 (citing *Mhoon*, 31 F.3d at 984 ("noting that jurisdiction was proper in part because both parties 'concede that a suit like this one would have been required at some point in some case other than the state tort action'")).

Similarly, here, First National is not a party in the state action. Moreover, it does not appear that either party has raised the issue of coverage in the underlying state lawsuit. *See Knoblauch*, D-202-CV-201301284. Thus, First National's question regarding its obligations will need to be addressed at some point. This federal action may "settle the coverage dispute" and "clarify[] the legal relations at issue" in the Complaint before this Court. *See Mhoon*, 31 F.3d at 983; *West*, 338 F. Supp. 3d at 1233. Thus, these factors seem to point to exercising jurisdiction.

Mr. Knoblauch, however, contends that the federal action will settle only a portion of the coverage dispute between the parties. (Doc. 7 at 5.) He believes that there is at least one state claim (negligent retention) that is not specifically excluded by the CGL Policy; thus, First National is obligated to defend Ben's in the state lawsuit, which will result in piecemeal litigation. (*Id.* at 6.)

First National disagrees that the negligent retention claim is explicitly allowed by the policy. (*See*, *e.g.*, Doc. 22 at 5–6.) After examining the parties' briefs on this motion and on First National's motion for summary judgment (*see* Docs. 10; 13; 14; 22), it is clear that the negligent retention claim presents the thorniest issue. The Court will address this more thoroughly with respect to the fourth *Mhoon* factor below.

### B. The third *Mhoon* factor is neutral.

"The third Mhoon factor is whether the declaratory remedy is being used merely for the purpose of 'procedural fencing.'" *Castillo*, 2019 WL 1383531, at *4 (quoting *Mhoon*, 31 F.3d at 983). Neither party argues that the other engaged in procedural fencing. The third *Mhoon* factor is neutral.

### C. The fourth and fifth *Mhoon* factors weigh heavily against invoking jurisdiction.

The fourth and fifth *Mhoon* factors examine whether the federal declaratory action would increase friction between the federal and state courts and encroach on the state court's jurisdiction and "whether there is an alternative remedy which is better or more effective." *Mhoon*, 31 F.3d at 983. Mr. Knoblauch argues that a determination of the coverage issue implicates "an unresolved question of state contract law" regarding how the Separation of Insured clause impacts the Auto Exclusion clause. (Doc. 7 at 7–8.) Mr. Knoblauch's argument is as follows: the Separation of Insured clause provides that the CGL Policy applies "[a]s if each Named Insured were the only Named Insured; and [s]eparately to each insured against whom claim is made or 'suit' is brought." (*See* Doc. 1-A at 18.) Under this severability clause, his allegations of "negligent business practices" against Ben's are completely unrelated to the automobile accident. Thus, the Auto Exclusion clause language excluding coverage for negligence claims is inapplicable, and First

National must defend the negligence claims against Ben's. (*See* Docs. 7 at 7–9; 13 at 4–5.) Alternatively, Mr. Knoblauch asserts that the Separation of Insured clause creates an ambiguity that renders the language in the Auto Exclusion clause excluding coverage for negligence claims void.

The parties should have, but did not, brief this issue in any of the motions pending before the Court, and the Court has pieced together Mr. Knoblauch's argument more from its review of relevant authority than from any brief he has submitted. Mr. Knoblauch cites two cases in his motion to dismiss (*see* Doc. 7 at 8–9 (citing *Premier Ins. Co. v. Adams*, 632 So. 2d 1054 (Fla. Dist. Ct. App. 1994); *Nw Nat'l Ins. Co. v. Nemetz*, 400 N.W.2d 33 (Wis. Ct. App. 1986))), which are largely inapposite and distinguishable from the lawsuit here, and he ignores a variety of cases that are more directly relevant to the circumstances of this case, though none are binding.

For example, in *West American Insurance Co. v. AV&S*, the Tenth Circuit examined the interplay of an Auto Exclusion clause and a Separation of Insureds clause almost identical to the provisions here, but within the ambit of Utah state law. 145 F.3d 1224 (10th Cir. 1998). The Tenth Circuit discussed "the majority rule," which "broadly interpret[s] the term 'any insured' under an exclusion clause to negate coverage for all insureds, even innocent co-insureds, despite the inclusion of a severability clause similar to the Separation of Insureds clause at issue" in *AV&S* and in this case. *Id.* at 1227–28. Under the majority rule, the Auto Exclusion clause would work to preclude coverage for Ben's because the language of the clause "applies even if the claims against *any insured* allege negligence or other wrongdoing" and "involved the . . . use . . . of any . . . 'auto' . . . that is owned or operated by . . . *any insured*." (*See* Doc. 1-A at 9 (emphasis added).) *See also AV&S*, 145 F.3d at 1227–28; *Barba v. Allianz Glob. Risks US Ins. Co.*, No. 16 CIV. 2673 (PAE), 2016 WL 6236324, at *8 (S.D.N.Y. Oct. 25, 2016) (noting that "the

overwhelming majority of courts to consider such an exclusion have held" that the phrase "any insured" is "unambiguous, and binding, even in the presence of a Separation of Insureds clause") (gathering cases); *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 833–34 (Okla. 2005), *as corrected* (Oct. 30, 2006) (same). A minority of jurisdictions, however, have found that a severability or Separation of Insureds clause imputes ambiguity into the exclusion clause language, which results in the ambiguity being construed against the insurance company and in favor of coverage. *See*, *e.g.*, *Brumley v. Lee*, 963 P.2d 1224, 1227–28, 1232 (Kan. 1998).

In finding that Utah would likely not follow the majority rule, the Tenth Circuit examined cases that discussed the term "any insured," particularly those cases that applied Utah law to find that the term "was ambiguous in light of other provisions of" an insurance policy. *AV&S*, 145 F.3d at 1229 (citing *Cyprus Plateau Min. Corp. v. Commonwealth Ins. Co.*, 972 F. Supp. 1379, 1382–86 (D. Utah 1997)). Here, the parties have not attempted to fully flesh out the coverage issue before the Court despite a fully briefed motion to dismiss and motion for summary judgment. Neither party has discussed applicable authority from other state or federal courts or compared those cases to the circumstances here. Nor has either party examined authority applying New Mexico law to the policy terms in play or wagered a guess as to how New Mexico courts might decide this issue. The Court is reluctant to supply an entire analysis without input from the parties.

First National argues that "[t]he fact that New Mexico insurance law applies is clearly not a sufficient reason to abstain from declaratory judgment jurisdiction." (Doc. 8 at 11.) It quotes dicta from *American National Property and Casualty Co. v. Wood*, where United States District Judge James Browning opined that in his "experience in similar situations[,] . . . New Mexico state courts, because of their more limited reserves and extreme caseloads, are often pleased that the federal court is deciding the coverage issue." No. CIV 07-1048 JB/RHS, 2008 WL 2229742, at

*11 (D.N.M. Mar. 21, 2008). Even if this Court agreed with that sentiment, it finds that *Wood* is inapposite, because the lawsuit here does not present a situation "similar" to the circumstances before the *Wood* court. There, the insurance company filed a declaratory judgment action to determine whether it "complied with New Mexico law in informing [the insured] about her selection of UM/UIM coverage." *Id.* at 10. The *Wood* court was not called upon to decide a novel question of state law with little to no briefing on the subject from the parties.

Were the Court to deny Mr. Knoblauch's motion to dismiss and tackle the unresolved question of state law, it would be forced to either wager an *Erie* guess on a record devoid of any substantive argument from the parties, or to certify a question to the New Mexico Supreme Court, which no party has requested and would likely result in an even more substantial delay in the state case. The Court finds instead that the best course of action is to dismiss the case without prejudice to allow the parties to raise the issue before the state court.

**THEREFORE**,

**IT IS ORDERED** that the Motion to Dismiss Declaratory Judgment Complaint, or, in the Alternative, to Abstain from Exercising Jurisdiction (Doc. 7) is **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE**. In the event that the state court fails to resolve the coverage controversy prior to the state court's entry of final judgment, First National may move, upon good cause shown, for leave to reinstate its complaint within 30 days of entry of the state court judgment.

**IT IS FURTHER ORDERED** that First National's Motion for Summary Judgment (Doc. 10), First National's two Motions for Default Judgment (Docs. 16; 26), and First National's Motion

to Strike (Doc. 25) are all **DENIED AS MOOT**.[4]

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE

---

[4] The Court notes that although the Clerk entered default as to Mr. Xahuentitla and Ben's on June 20, 2019 (Doc. 21), the Clerk was not authorized to do so under Federal Rule of Civil Procedure 55(b). *See Nev. Gen. Ins. Co. v. Anaya*, 326 F.R.D. 685, 690 (D.N.M. 2018) (finding that "the Court Clerk is not authorized under Rule 55(b) to enter a default judgment in a declaratory judgment action") (citation omitted).